IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GENESIS INDEMNITY INSURANCE §
COMPANY, §
§
Plaintiff-counterdefendant, §
§
§ Civil Action No. 3:04-CV-1052-D
VS. §
§
TUDOR INSURANCE COMPANY, §
§
Defendant-counterplaintiff. §

MEMORANDUM OPINION
AND ORDER

In this insurance coverage dispute concerning which insurer is
liable for funds paid to defend and settle a wrongful death suit,
the disposition of the cross-motions for summary judgment turns on
whether it can be determined from the record in the underlying suit
whether one insured party was covered as an additional insured
under another policy.   Concluding there are genuine issues of
material fact that preclude summary judgment for either insurer,
the court denies both motions.

I

In November 2000 Statewide Patrol, Inc. ("Statewide") was
hired as a security and courtesy patrol at Melody Village, an
apartment complex in Dallas, by the complex's owners and operators,
Texas Melody Apartments, L.P., Texas Melody Properties Corporation,
and Southwest Housing Management, Inc. (collectively, "Melody
Apartments").   In December Osvaldo A. Torres ("Torres"), a
Statewide security guard, was shot and killed while working at

Melody Village.  A wrongful death action——"the *Iturralde* Suit[1]——was filed in Texas state court.  The plaintiffs alleged that Torres' death was caused by the negligence of both Melody Apartments and Statewide and that the plaintiffs were entitled to recover from Melody Apartments under a theory of "Third Party Beneficiary/Fraud/Conspiracy" arising from its agreement to indemnify Statewide for Statewide's negligence in providing security services to Melody Apartments.

During the relevant period, Melody Apartments was insured by plaintiff-counterdefendant Genesis Indemnity Insurance Company ("Genesis") under a commercial general liability ("CGL") insurance policy ("Genesis Policy").  The Genesis Policy contained an Other Insurance clause that provided, in relevant part:

> 4.   Other Insurance
>
> If other valid and collectible insurance is available to the insured [Melody Apartments] for a loss we [Genesis] cover . . . , our obligations are limited as follows:
>
> . . .
>
> b.   Excess Insurance
>
> This insurance is excess over . . .
>
> . . .
>
> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you

---

[1]*Iturralde v. Statewide Patrol, Inc.*, No. 01-09068-J (191st Dist. Ct., Dallas County, Tex.).

> have been added as an additional insured by
> attachment of an endorsement.

P. July 1, 2005 App. 44.[2]

Defendant-counterplaintiff Tudor Insurance Company ("Tudor") insured Statewide under a CGL policy ("Tudor Policy"). Tudor also insured Melody Apartments under the Tudor Policy as an additional insured. The Additional Insured Endorsement of the Tudor Policy provided, in relevant part: "Coverage is provided for such 'additional insureds' only to the extent that liability is created for such 'additional insureds' by the negligent acts, errors, or omissions of the Named Insured." *Id.* at 81. Applied to the instant case, coverage under the Tudor Policy was provided for Melody Apartments, as an additional insured, if liability for Melody Apartments was created by the negligent acts, errors, or omissions of Statewide.

In the *Iturralde* Suit Genesis provided Melody Apartments a defense. Tudor issued a reservation of rights letter in which it indicated that, although Melody Apartments[3] might qualify as an additional insured under the Tudor Policy, Tudor was reserving its rights. The *Iturralde* Suit settled for $73,000, of which $12,000

---

[2]Because in litigating these cross-motions the parties have filed multiple appendixes, the court will refer to each appendix according to the party who filed it and the date it was filed.

[3]Tudor referred specifically to "Southwest Housing Management," P. July 1, 2005 App. 111, which is one of the entities that the court includes in the collective term "Melody Apartments."

was to be paid by or on behalf of Statewide and $61,000 was to be paid by or on behalf of Melody Apartments.[4]   Tudor and Genesis split evenly Melody Apartments' payment obligation, each paying $30,500.

Genesis then filed the instant suit seeking recovery of its $30,500 payment, attorney's fees and costs in defending the *Iturralde* Suit, and attorney's fees and costs incurred in litigating the present case.   Genesis alleges that because Melody Apartments was an additional insured under the Tudor Policy, the Other Insurance clause of the Genesis Policy makes Genesis' insurance coverage excess, and the Tudor Policy provides primary coverage for Melody Apartments' liability.   Under Genesis' theory, Tudor was obligated to defend and indemnify Melody Apartments; Genesis had neither a duty to defend nor to indemnify because its coverage was excess and Tudor did not exhaust its policy limits in settling the *Iturralde* Suit.

Tudor removed the case to this court and filed a counterclaim. It seeks a declaratory judgment that, in the *Iturralde* Suit, Tudor and Genesis were co-insurers of Melody Apartments under the Additional Insured Endorsement of the Tudor Policy (i.e., Tudor contends it is not the primary insurer), and that its participation in the *Iturralde* Suit on a 50% basis and contribution of 50% of the

---

[4]The $12,000 portion of the settlement to be paid by or on behalf of Statewide is not at issue in this lawsuit.

settlement funds was proper.

Tudor and Genesis have filed cross-motions for summary judgment.[5]

## II

After the instant motions were briefed, the court sought additional briefing concerning whether it has subject matter jurisdiction. Genesis seeks in this litigation to recover its $30,500 payment in the *Iturralde* Suit, $29,076.49 in attorney's fees and expenses that it expended in that lawsuit, and attorney's fees and expenses incurred in the present suit. The court raised the question whether the requirement of 28 U.S.C. § 1332—that the matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs—is satisfied. If Genesis cannot recover its attorney's fees in prosecuting this lawsuit, it is doubtful that the amount in controversy exceeds the jurisdictional minimum.

"[A]ttorney fees are includ[a]ble in computing the jurisdictional amount if the plaintiff may recover them as an element of damages, either pursuant to a governing statute or under the district court's equitable power to award fees." 14B Charles A. Wright et al., *Federal Practice and Procedure* § 3702, at 89-93 (3d ed. 1998). Genesis filed this suit in Texas state court

_____

[5]Tudor's motion is for partial summary judgment. For convenience, the court will refer to it throughout this opinion as a motion for summary judgment.

- 5 -

seeking declaratory relief under the Texas Declaratory Judgment Act ("TDJA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-37.011 (Vernon 1997). Because the TDJA is a procedural rule that does not apply in federal court, the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, governs the court's determination of attorney's fees. *See Landscape Design & Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002) (Fitzwater, J.). The federal Declaratory Judgment Act "'does not by itself provide[ ] statutory authority to award attorney's fees that would not otherwise be available under state law in a diversity action.'" *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (quoting *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988)). Moreover, the "otherwise available state law in a diversity case must be substantive." *Id.* (internal quotation marks and ellipsis omitted). In *Utica* the Fifth Circuit concluded that "a party may not rely on the [TDJA] to authorize attorney's fees in a diversity case" in federal court. *Id.*

In addition to its declaratory judgment claim, Genesis seeks attorney's fees "as a result of Tudor's breach of contract pursuant to § 38.001 *et seq.* of the Tex. Civ. Prac. & Rem. Code." Compl. ¶ 17. Under Texas law, attorney's fees are available under Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997). *See, e.g., Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 492 (5th Cir. 2004). The question presented is whether Genesis can

recover attorney's fees under § 38.001, even if they are not available under the TDJA.

In response to the court's directive, the parties have submitted a joint brief in which they maintain that Genesis has alleged that it was equitably and legally subrograted to the rights of the underlying insureds. Joint Br. 1. They urge that because Genesis asserts a breach of contract action as subrogee, it may be entitled to attorney's fees under § 38.001. *Id.* The parties do not address Genesis' earlier characterization of its complaint as one for declaratory judgment. Indeed, Genesis does not appear to be requesting a declaratory judgment as that term has traditionally been understood, because it seeks to recover monetary damages from Tudor. *See* 10 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2751, at 457-58 (3d ed. 1998) (describing declaratory judgments to "permit[ ] actual controversies to be settled *before they ripen into . . . a breach of contractual duty*") (emphasis added)). Nevertheless, because Genesis may be entitled to recover its attorney's fees under § 38.001(8), the court concludes that it has subject matter jurisdiction because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. The court will therefore reach the merits of the parties' cross-motions for summary judgment.

III

Because the parties' cross-motions present related arguments, the court will, with one exception,[6] consider them together.

A

Tudor concedes that the Additional Insured Endorsement of the Tudor Policy provided coverage for Melody Apartments to the extent liability was "created for" Melody Apartments by Statewide's negligent acts, errors, or omissions. It contends, however, that "because the [*Iturralde* Suit] did not allege that Melody Apartments should be held liable for [Statewide's] negligent acts, errors, or omissions, and because Melody Apartments as a legal matter could not have been thus held liable," Melody Apartments' liability was not created by covered activity. D. June 29, 2005 Br. 6 (emphasis omitted).[7] Tudor argues that because the Tudor Policy provides no coverage to Melody Apartments in these circumstances, the Other Insurance clause of the Genesis Policy is inapplicable and does not make Genesis' coverage excess to Tudor's.

Genesis contends that Tudor has admitted that Melody Apartments was insured under the Additional Insured Endorsement of the Tudor Policy and that Tudor is barred from contending

---

[6]Tudor's motion for summary judgment seeks recoupment of its $30,500 payment on behalf of Melody Apartments to settle the underlying litigation. The court will address this claim in § IV.

[7]Because in litigating these cross-motions the parties have filed multiple briefs, the court will refer to each brief according to the party who filed it and the date it was filed.

otherwise.  It also maintains that the language of the Additional
Insured Endorsement is ambiguous and must be construed in favor of
coverage for Melody Apartments.  Finally, Genesis posits that Texas
law regarding premises liability triggers Melody Apartments'
liability for Statewide's negligence within the meaning of the
Additional Insured Endorsement.  *Id.*  It concludes that the Other
Insurance clause of the Genesis Policy applies because the Tudor
Policy provides primary coverage to Melody Apartments.

In sum, both parties' contentions turn on whether Tudor owed
a duty to defend and/or indemnify Melody Apartments under the
Additional Insured Endorsement of the Tudor Policy.[8]

---

[8]It is well settled, of course, that in Texas "the duty to
defend and to indemnify are distinct and separate duties creating
distinct and separate causes of action." *Am. Alliance Ins. Co. v.
Frito-Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App. 1990, writ dism'd
w.o.j.).   The duty to defend is "broader than the duty to
indemnify." *E&L Chipping Co. v. Hanover Ins. Co.*, 962 S.W.2d 272,
274 (Tex. App. 1998, no pet.).  "The duty to defend arises when a
third party sues the insured on allegations that, if taken as true,
potentially state a cause of action within the terms of the
policy." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d
709, 713 (5th Cir. 2002) (internal quotation marks omitted).  By
contrast, the duty to indemnify is triggered by the actual facts
establishing liability in the underlying suit. *Quorum Health Res.,
L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 468-69 (5th
Cir. 2002); *see also Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d
1485, 1493 (5th Cir. 1992) (observing that even if insurer breaches
duty to defend, it is not in all respects estopped from challenging
duty to indemnify).
Genesis maintains that Tudor had a duty to defend Melody
Apartments in the *Iturralde* Suit because "Tudor's insurance was
primary."  P. July 1, 2005 Br. 4; *see also* P. July 1, 2005 App. 45
(Genesis Policy provides that "[w]hen this insurance is excess, we
will have no duty under Coverages A or B to defend [Melody
Apartments]").  It does not contend, however, that Tudor had a duty
to defend Melody Apartments in the *Iturralde* Suit apart from its

B

The court turns first to Genesis' contention that Tudor has admitted that Melody Apartments is an additional insured under the Tudor Policy.  This argument is logically considered as a threshold question because, if correct, it is dispositive of Tudor's duty to indemnify Melody Apartments.

In its initial brief in support of its own summary judgment motion and in its brief in opposition to Tudor's motion, Genesis relies on Tudor's pleadings to argue that Melody Apartments is not covered under the Tudor Policy.  *See* P. July 1, 2005 Br. 3 ("Tudor's pleadings admit its status as an insurer.").  The only pleading that Genesis cites in its initial brief, however, is one

_____

obligation to indemnify Melody Apartments.  In other words, Genesis does not assert that Tudor had an independent duty to defend Melody Apartments arising from the allegations in the *Iturralde* Suit. Indeed, Genesis and Tudor both focus solely on the question whether Melody Apartments is covered by the Tudor Policy.  In this case, the court cannot resolve on summary judgment whether Tudor had a duty to indemnify, and the parties premise Tudor's duty to defend on its duty to indemnify.  Accordingly, the court also declines to resolve on summary judgment the duty to defend, where neither party addresses the duties separately.
    Alternatively, even if the court could conclude at this juncture that Tudor had a duty to defend Melody Apartments based on the allegations of the *Iturralde* Suit, it could not grant partial summary judgment for Genesis concerning the attorney's fees and costs it incurred in defending Melody Apartments in that case. This is because the court cannot say that only Tudor, and not Genesis, had a duty to defend.  *See, e.g., Utica Nat'l Ins. Co. of Tex. v. Tex. Prop. & Cas. Ins. Guar. Ass'n*, 110 S.W.3d 450, 458 (Tex. App. 2001) (holding that where multiple insurers have duty to defend, neither must pay all defense costs because they share duty until one has either exhausted its policy limits or is declared impaired), *rev'd on other grounds sub nom. Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198 (Tex. 2004) (on rehearing).

page from Tudor's answer and counterclaim in which Tudor admits that it and Genesis were co-insurers of Melody Apartments and that Tudor was a co-insurer under a limited additional insured endorsement. *See id.* (citing P. July 1, 2005 App. 116).  This assertion is consistent with the one made in Tudor's motion for summary judgment, which forms the basis for the argument that the Tudor Policy provided no coverage. *See* D. June 29, 2005 Br. 1-2. Except to this limited extent, Tudor does not, as Genesis contends, admit that the underlying defendants were covered under the Tudor Policy.  In its responsive brief, Genesis argues that Tudor's admission that it is a co-insurer precludes Tudor from denying coverage. *See* P. July 19, 2005 Br. 3 ("By admitting liability as a co-insurer of [Melody Apartments] on several occasions, Tudor is barred from taking an inconsistent position that its insurance did not cover [it].").  This assertion misunderstands Tudor's conception of "co-insurer."  Throughout Tudor's briefing, it characterizes itself as a co-insurer with Genesis of Melody Apartments under the terms of a limited additional insured endorsement that it maintains was never triggered.  In other words, it concedes that it was contractually bound to cover Melody Apartments under the terms of the additional insured endorsement, but it consistently denies that it was factually obligated to do so.  Tudor has not judicially admitted that it was obligated to indemnify Melody Apartments in connection with the claims of the

*Iturralde* Suit.

Genesis urges in a surreply brief that Tudor has "already judicially admitted that the underlying defendants qualify as additional insureds under its policy." P. Aug. 25, 2005 Br. 6.  It contends that "there is no need for the Court to consider whether or not the underlying defendants are covered, Tudor is estopped from taking an inconsistent position that the underlying defendants are not covered, and therefore coverage should be extended to the underlying defendants as a matter of law." *Id*. Genesis relies on language contained in Tudor's reservation of rights letter, in which Tudor stated that "[i]t appears that [Melody Apartments] will, in fact, qualify as an additional insured under the . . . Additional Insured Endorsement." *See* P. July 1, 2005 App. 111; *see also id*. at 111-113.  The court rejects Genesis' contention.

A reservation of rights letter "protects an insurer from a subsequent attack on its coverage position on waiver or estoppel grounds." *Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 133 (Tex. 2000) (internal quotation marks omitted).  The reservation of rights letter fully and unambiguously informed Genesis that

> by participating in [Melody Apartments'] defense under this letter's terms, Tudor is reserving its rights.  The reasons for this reservation of rights are (1) the limiting language of the Tudor policy's Additional Insured Endorser as set out and explained above . . . .  Neither by . . . settling . . . [nor] participating in defense . . . does

- 12 -

> Tudor waive the right to deny coverage under
> its policy.

P. App. 112.  Accordingly, Tudor is not now estopped from denying

coverage on the ground that Melody Apartments' liability does not

fall within the Tudor Policy's coverage.

C

The question whether Tudor owed a duty to indemnify Melody

Apartments is determined by examining the actual facts establishing

liability in the underlying suit.  *See Quorum Health Res., L.L.C.*

*v. Maverick County Hosp. Dist.*, 308 F.3d 451, 468-69 (5th Cir.

2002) ("The duty to indemnify arises from the actual facts that are

developed to establish liability in the underlying suit."); *Trinity*

*Univ. Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997) ("The duty

to indemnify is triggered by the actual facts establishing

liability in the underlying suit.").[9]  The "duty to indemnify

requires facts, and factual allegations in a petition do not

necessarily all become facts merely because of a settlement of the

suit."  *W. Alliance Ins. Co. v. N. Ins. Co. of N.Y.,* 176 F.3d 825,

831 (5th Cir. 1999).  Moreover, the insured initially bears the

burden of proving coverage by presenting facts sufficient to

demonstrate coverage, whereas the insurer bears the burden of

establishing that a policy limitation excludes coverage.  *Id.*

---

[9]Although both parties' contentions turn on whether Tudor owed
a duty to indemnify Melody Apartments for its liability in the
underlying litigation, neither party mentions this duty.

1

Because Genesis will have the burden at trial of establishing facts that entitle it to coverage, to prevail on its motion for summary judgment it "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  Conversely, because Tudor will not have this burden at trial, it may be able to show that it is entitled to summary judgment by pointing the court to the absence of evidence to support Genesis' claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If Tudor does so, Genesis must then go beyond its pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  Summary judgment is mandatory when the nonmoving party fails to meet this burden.  *Little*, 37 F.3d at 1076.

2

To decide the cross-motions for summary judgment, the court must principally determine whether the facts establish that Statewide's negligent acts, errors, or omissions created liability for Melody Apartments.  There may be cases where the allegations of the underlying state-court petition alone permit the court to decide this issue, such as where the court need only "compare the

insurance contract with the complaint and determine as a matter of law what portion of the damages were covered." *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1494 (5th Cir. 1992). This appears to be Tudor's contention, i.e., that none of the allegations in the *Iturralde* Suit asserts facts under which Tudor could owe a duty to indemnify Melody Apartments. *See* D. June 29, 2005 Br. 5 ("Nowhere did any of the [*Iturralde* Suit] pleadings allege that Melody Apartments should be held vicariously liable for the acts of [Statewide].")*; D. Aug. 2, 2005 Br. 8 ("[A]s a matter of law [Melody Apartments] could not have been held liable in the [*Iturralde* Suit] for [Statewide's] acts."). For reasons the court will explain, this is not a case in which the allegations of the *Iturralde* Suit enable it to decide whether Melody Apartments was covered by the Tudor Policy.

The *Iturralde* plaintiffs alleged that Statewide itself was negligent, *inter alia*, for failing to train its employees, provide on-the-job support, and provide necessary safety equipment. They also asserted that Melody Apartments was negligent, *inter alia*, in failing to evict drug dealers and other criminals, provide security measures and adequate lighting, and act as a reasonable and prudent owner or manager of an apartment complex. Finally, and significantly, the *Iturralde* plaintiffs alleged a "Third Party Beneficiary/Fraud/Conspiracy" claim against Melody Apartments on the basis that it had agreed to indemnify Statewide "for any

injuries, claims or damages associated with [Statewide's]
negligence and in connection with providing security on the [Melody
Apartments'] premises." D. June 29, 2005 App. 64. They alleged
that "Contractually, [Melody Apartments was] required to satisfy
any judgment obtained by Plaintiffs against Statewide, thereby
making Plaintiffs third-party beneficiaries to the Contract.
Accordingly, any and all liability and damages imposed upon
Statewide must be satisfied by [Melody Apartments]." *Id.* at 64-
65.[10]  As this claim was pleaded, the *Iturralde* plaintiffs sought
to establish that Melody Apartments was contractually liable for
Statewide's negligence. Arguably, liability for Melody Apartments
was created by the negligent acts, errors, or omissions of
Statewide, albeit via the terms of an indemnity agreement. The
court must therefore reject Tudor's contention that, based solely
on the allegations of the pleadings in the *Iturralde* Suit, it can
be determined that Melody Apartments is not an additional insured

---

[10]The plaintiffs contended that, although Melody Apartments had
agreed to indemnify Statewide for injuries associated with
Statewide's negligence, after Torres' death, Melody Apartments and
Statewide fraudulently modified their contract to exclude the
indemnity provision and backdated the contract. The reservation of
rights letter Tudor sent to Genesis on April 7, 2003 also indicated
that the indemnity provision in the security services contract was
deleted upon amendment. The contract in the summary judgment
record for services beginning on December 4, 2000 in fact contains
an indemnity provision. Moreover, Tudor directs the court to this
indemnity provision without indicating that it had been amended.
And the court has been unable to locate in the summary judgment
record an amendment that deleted the indemnity provision. Neither
party has offered an explanation for this discrepancy.

under the Tudor Policy.

Accordingly, the court must examine the actual facts that established liability in the *Iturralde* Suit. Relevant facts may include those regarding whether Statewide acted negligently and whether such negligence created liability for Melody Apartments under Texas contract or tort law. Other courts interpreting Texas law have identified several possible "sources" that may help this court in determining the pertinent facts: the allegations of the petition in the *Iturralde* Suit, the settlement between Melody Apartments and the *Iturralde* plaintiffs, and the facts that would have been the subject of the *Iturralde* Suit had the case not settled. *See W. Alliance Ins. Co.,* 176 F.3d at 831; *Enserch*, 952 F.3d at 1494; *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *14 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.). This court has previously made an *Erie* prediction that the Texas Supreme Court would allow new evidence to be introduced at the instant coverage trial when such proof is necessary to resolve coverage questions that were not determined in the underlying lawsuit. *See Swicegood*, 2003 WL 22234928, at *14 (denying in part cross-motions for summary judgment where genuine issues of fact remained as to insurer's duty to indemnify). New evidence may likewise be necessary in this case, and it may consist of historical evidence from the *Iturralde* Suit and/or expert testimony to assist the trier of fact in determining Tudor's duty to indemnify. *See id.* at *15.

- 17 -

The parties maintain that the instant case can be resolved based on the court's interpretation of the Additional Insured Endorsement alone.   In their June 21, 2005 joint scheduling proposal, they indicate that "[t]here are almost certainly no questions of fact that will need to be tried . . . ."   Joint Scheduling Proposal 1.  Although the Additional Insured Endorsement controls Melody Apartments' ultimate entitlement to coverage, neither party has sufficiently developed the record to permit this court to decide, under the controlling summary judgment standard, whether Tudor had a duty to indemnify Melody Apartments under the Tudor Policy.  Moreover, the principal case upon which Tudor relies for the proposition that an additional insured's liability fell outside the scope of the policy's coverage——*BP Chemicals, Inc. v. First State Ins. Co.*, 226 F.3d 420 (6th Cir. 2000)——was also a coverage dispute that followed a state court settlement of a wrongful death action.   But significantly, the United States District Court that presided over the ensuing insurance coverage litigation conducted a jury trial to determine the relative negligence of the state court defendants before it considered the dispute over the scope of the additional insured endorsement at issue.  *See id.* at 423.  The record in the present case has not yet been as fully developed.

The court thus concludes that this case does not turn on a question that can be decided on motion for summary judgment.

Because genuine issues of fact exist as to Tudor's duty to indemnify Melody Apartments in the *Iturralde* Suit, neither party is entitled to summary judgment.

Moreover, once it is determined whether the Tudor Policy affords coverage for Melody Apartments as an additional insured and, in turn, whether the Tudor policy is primary, an apportionment or allocation question may remain. Although the parties do not address this issue, it should be noted that, even if Melody Apartments is entitled to coverage under the Tudor Policy for liability created for it by Statewide's negligence, the plaintiffs in the *Iturralde* Suit also alleged that Melody Apartments was itself negligent. Neither party contends that the Tudor Policy provides coverage for liability created for Melody Apartments by its own negligence. Accordingly, there may remain issues of fact concerning the sources of Melody Apartments' liability, whether created for it by Statewide's negligence or through its own negligence. *See Swicegood*, 2003 WL 22234928, at *5-*6 (interpreting Texas law to provide that apportionment or allocation not made in underlying third-party litigation may be made in first-party coverage case).

IV

Although the question whether Tudor is entitled to recoup its $30,500 payment turns in part on the determination of its duty to indemnify Melody Apartments, Genesis also opposes Tudor's summary

- 19 -

judgment motion on separate grounds.  Genesis urges that Tudor was required to, but did not, plead reimbursement as a theory of recovery.  *See* P. July 19, 2005 Br. 1.  The court understands this contention to be that, even if Tudor had no duty to indemnify Melody Apartments, it nevertheless is not entitled to recover its $30,500 payment.

Tudor requests by its counterclaim that the court "declare that Tudor was a co-insurer rather than the primary insurer of [Melody Apartments]."  D. Countercl. ¶ 4.  Its summary judgment motion, however, requests that "Genesis take nothing and that Tudor recover its 50% share of the settlement from Genesis."  D. June 29, 2005 Br. 7; *see id.* at 2 (seeking similar relief).  The question presented is whether Tudor's request for reimbursement on summary judgment is merely a form of relief or is instead a legal theory to establish liability that must be pleaded.  *See S. Constructors Group v. Dynalectric Co.*, 2 F.3d 606, 609-610 (5th Cir. 1993) (concluding that because quasi-contract claim was not merely a form of relief under Louisiana law, party was required to plead it).

Fed. R. Civ. P. 54(c) "vests district courts with broad discretion to fashion a remedy, even if the remedy awarded is not specifically requested in the prayer for relief."  *N. Alamo Water Supply Corp. v. City of San Juan*, *Tex.*, 90 F.3d 910, 918 (5th Cir. 1996) (per curiam); *see also* Rule 54(c) ("[E]very final judgment shall grant the relief to which the party in whose favor it is

rendered is entitled, *even if the party has not demanded such relief in the party's pleadings.*" (emphasis added)); *Int'l Harvester Credit Corp. v. E. Coast Truck*, 547 F.2d 888, 891 (5th Cir. 1977) ("Rule 54(c) does permit or perhaps even requires the trial judge to grant relief to which a party is entitled even if not requested in the prayer for relief, but there are exceptions to the rule."). If the reimbursement Tudor seeks is merely a form of relief, the court has the discretion to award it. If the reimbursement is a legal theory, however, the court must decline to award reimbursement on the basis that it has not as yet been pleaded. *See S. Constructors Group*, 2 F.3d at 609-10 (concluding theories of case not raised are waived); *see also Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (holding that "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court"). Moreover, this analysis conforms with Rule 8(c), which requires parties to plead affirmative defenses. *See* Rule 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense.").

Because the court has determined that neither party is entitled to summary judgment, it need not now resolve whether Tudor's reimbursement request is a form of relief or a legal theory. If, for instance, it is ultimately determined that Tudor

has a duty to indemnify Melody Apartments and that Statewide's negligence created the entirety of Melody Apartments' liability, Genesis' contention that Tudor is not entitled to reimbursement is potentially moot.   In other words, Tudor's entitlement to reimbursement depends in part on whether it has the duty to indemnify Melody Apartments.

Moreover, under Rule 15(a), a party may amend its pleadings by leave of the court, "and leave shall be freely given when justice so requires."   Rule 15(a).   In view of this standard, it would appear that any pleading defect could be remedied well before the case is tried, thus eliminating this issue from the case.

Genesis contends in the alternative that, if the court adopts Tudor's position that its policy did not cover Melody Apartments, then its payment to settle the *Iturralde* Suit was voluntary, and Tudor is barred from recovering the payment as a matter of law. The court disagrees.   Tudor made the payment subject to a reservation of rights letter, which "protects an insurer from a subsequent attack on its coverage position on waiver or estoppel grounds."   *Tex. Ass'n of Counties County Gov't Risk Mgmt. Pool*, 52 S.W.3d at 133 (internal quotation marks omitted).

*       *       *

For the reasons set out above, the court denies both Tudor's June 29, 2005 motion for partial summary judgment and Genesis' July 1, 2005 motion for summary judgment.

**SO ORDERED.**

February 10, 2006.

_____

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE